T.C. Memo. 2013-104

UNITED STATES TAX COURT

RONALD RAMDAS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8854-11L.                    Filed April 15, 2013.

        In response to R's notice of a proposed levy, P's request for a
collection due process ("CDP") hearing under I.R.C. sec. 6330(d) for
his 2005 income tax requested abatement of penalty and stated that he
wanted a collection alternative--an offer-in-compromise ("OIC") or
an installment agreement ("IA").  At the CDP hearing before R's
Office of Appeals ("Appeals"), P submitted a financial statement (on
Form 433-A, "Collection Information Statement for Wage Earners
and Self-Employed Individuals") and an OIC concerning his 2005-
2008 income tax liabilities.  P did not raise the abatement of penalty
issue during the CDP hearing or submit a proposed plan for an IA.
To evaluate P's OIC, Appeals requested documentation concerning
P's assets and income.  P was given several extensions of deadlines to
provide this additional documentation, but he never fully complied
with Appeals' request.  Nonetheless, on the basis of the financial
information provided, Appeals determined P could fully pay his
2005-2008 liabilities.  Appeals determined to reject P's OIC and
proceed with the proposed levy to collect P's unpaid 2005 liability.  P

**[*2]** filed a petition in this Court, and R moved for summary judgment.

 Held:  Appeals did not abuse its discretion in rejecting P's OIC and determining to proceed with the proposed levy, because P failed to produce all the requested documentation about his assets and income.

 Held, further, Appeals did not abuse its discretion in rejecting P's OIC when Appeals determined that P could fully pay his 2005-2008 liabilities.

 Held, further, Appeals did not abuse its discretion in not considering the abatement of penalty issue when P did not raise it at the CDP hearing.

 Held, further, Appeals did not abuse its discretion in not considering an IA when P proposed none.

Suzanne A. Ascher, for petitioner.

Marissa J. Savit, for respondent.

MEMORANDUM OPINION

GUSTAFSON, Judge:  This is a collection due process ("CDP") appeal pursuant to section 6330(d),[1] in which petitioner Ronald Ramdas asks this Court to

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 as in effect at all relevant times (codified in 26 U.S.C., and referred to

(continued...)

[*3] review the determination by the Office of Appeals ("Appeals") of the Internal Revenue Service ("IRS") to deny Mr. Ramdas's request for a collection alternative and to proceed with a levy to collect his unpaid Federal income tax for tax year 2005. The issue is whether Appeals abused its discretion in making that determination. Respondent, the Commissioner of the Internal Revenue Service, moved for summary judgment pursuant to Rule 121, and Mr. Ramdas filed an opposition. We hold that Appeals did not abuse its discretion in rejecting Mr. Ramdas's offer-in-compromise ("OIC") and determining to proceed with the proposed levy. We will therefore grant the Commissioner's motion.

## Background

The Commissioner's motion establishes the following facts, which Mr. Ramdas does not dispute.

### Mr. Ramdas's 2005 liability

Mr. Ramdas filed a Federal income tax return for tax year 2005, reporting an income tax liability of $2,271 and tax withheld of $22,665, and requesting a refund of $20,394. The IRS assessed the amount of tax shown on the return and issued a refund in the requested amount of $20,394.

---

[1](...continued)
herein as "the Code"), and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*4]**   The IRS subsequently audited Mr. Ramdas's 2005 return and determined a deficiency in his 2005 income tax plus an accuracy-related penalty under section 6662(a).  Mr. Ramdas does not dispute that the IRS issued a notice of deficiency to him or that he received it, but he did not petition this Court for redetermination of the proposed deficiency.  As a result, on February 9, 2009, the IRS assessed for tax year 2005 a tax deficiency of $28,992, an accuracy-related penalty of $5,798.40, and interest of $7,654.62.  Notice and demand for payment was sent to Mr. Ramdas, but he failed to pay in full the assessed amounts.

The IRS's proposed levy

On August 31, 2009, the IRS issued to Mr. Ramdas a "Final Notice of Intent to Levy and Notice of Your Right to a Hearing".  Mr. Ramdas's unpaid balance for tax year 2005 (with accruals for interest and additions for the late payment of tax) was $17,293.81 at that time.

Mr. Ramdas thereafter submitted a timely Form 12153, "Request for a Collection Due Process or Equivalent Hearing", which was also signed by his attorney.  On that Form 12153, Mr. Ramdas checked the boxes to indicate a desire for both an installment agreement ("IA") and an OIC.  In addition, he checked the box marked "Other", and in the corresponding space for the "Reason" for which he requested a hearing, he stated:

**[\*5]**  Taxpayer requests a CDP hearing as a levy would be a hardship & a burden.  Taxpayer requests a collection alternative (i.e. OIC, I/A, etc.).  Further, taxpayer requests penalty abatement as he believes he has reasonable cause for abatement of penalties.

CDP hearing

On December 16, 2009, Appeals sent to Mr. Ramdas a letter scheduling his CDP hearing to be conducted as a telephone hearing on January 13, 2010, and stating that, in order for Appeals to consider alternative collection methods, Mr. Ramdas must provide within 14 days (i.e., by December 30, 2009):  (1) a completed Form 433-A, "Collection Information Statement for Wage Earners and Self-Employed Individuals" (i.e., a financial statement), with the required attachments, and (2) a completed Form 656, "Offer In Compromise," with all applicable fees and schedules.  In addition, Appeals informed Mr. Ramdas that he could not challenge the underlying liability at issue because he had a prior opportunity to do so when he was issued the notice of deficiency.

Mr. Ramdas failed to provide the requested documentation to Appeals by the December 30, 2009, deadline.  Instead, on January 12, 2010 (i.e., one day before the scheduled telephone CDP hearing), Mr. Ramdas's attorney requested that Mr. Ramdas's CDP hearing be held as a face-to-face hearing instead.  The IRS agreed, and the case was transferred to the New York Appeals Office.

[*6]   On January 27, 2010, an Appeals Officer in the New York Appeals Office issued a letter to Mr. Ramdas and his attorney, scheduling his face-to-face CDP hearing for February 25, 2010.  The January 27, 2010, letter stated that Mr. Ramdas should provide all pertinent information within 14 days--i.e., by February 10, 2010. Specifically, Appeals' letter stated that in order for the IRS to consider a collection alternative, Mr. Ramdas must provide the following:

- •   A completed Collection Information Statement (Form 433-A for individuals and/or Form 433-B for businesses.)

- •   Proof of income earned for the last 3 months

- •   Proof of expenses for the last 3 months

- •   Bank statements for the last 3 months

- •   Life insurance policy - type, conditions for borrowing or cancellation, current loan and cash value

- •   Retirement Accounts/IRA/401(k)/Brokerage/Securities/or other investment accounts statements for the last 3 years.

- •   Documentation regarding all Real Property own[ed] or interest in for the last 3 years - description of the property, number of rooms, baths, basement etc, value of the asset, purchase date, loan balance, monthly payment, latest real estate tax statement and deed

- •   Motor vehicle, boats etc. for the last 3 years - description of the asset, number of miles, value of the asset, purchase date, loan balance, monthly payment

[*7]   •   Documentation of accounts and or other assets held in your name or in [sic] which you have control over.

•   Medical documentation pertaining to taxpayer's or dependents [sic] health that affects the taxpayer's ability to satisfy the liability.

•   A statement regarding taxpayer's educational background, employment

•   Form 433 B - Collection Information Statement for Business-- for any business taxpayer has an interest in or owns. Documentation to include but not limited to Account Receivables/Payables, Cash Flow, bank statements for the last 3 months, documentation of assets held in company or the taxpayer/officers name and the last 3 years of the business Income Tax Return including all K-1, schedules, attachments etc.

Mr. Ramdas failed to provide any of the requested documentation by the February 10, 2010, deadline. Instead, sometime between February 15 and 19, 2010, Mr. Ramdas's attorney left a telephone message for the Appeals Officer requesting, because of a scheduling conflict, that the face-to-face CDP hearing be rescheduled for a later date.

On February 23, 2010, the Appeals Officer spoke with Mr. Ramdas's attorney and rescheduled his CDP hearing for March 10, 2010. The Appeals Officer stated that all documents Mr. Ramdas wished to be considered were due by

[*8] February 26, 2010.  It is unclear from the record whether Mr. Ramdas submitted any of the requested information by the February 26 deadline.

On March 10, 2010, the Appeals Officer held a face-to-face CDP hearing with Mr. Ramdas's attorney.  During the CDP hearing Mr. Ramdas's attorney submitted an OIC that covered Mr. Ramdas's income tax liabilities not only for the 2005 tax year at issue here but also for tax years 2006, 2007, and 2008.  By that OIC Mr. Ramdas proposed to compromise his unpaid tax liabilities for tax years 2005 through 2008 (which at that time totaled approximately $64,410)[2] by paying a total of about 2% of his liability--i.e., $1,500--by paying $300 immediately as a 20% downpayment and paying the remaining $1,200 within five months.[3]  Along with the OIC, Mr. Ramdas submitted the required $150

---

[2]In June 2010 the IRS totaled Mr. Ramdas's liabilities as follows:

| Tax period | Unpaid liability |
| --- | --- |
| 2005 | $17,803.41 |
| 2006 | 5,038.75 |
| 2007 | 17,017.00 |
| 2008 | 24,551.00 |

[3]Mr. Ramdas's petition states that Appeals made a determination as to 2005 through 2008.  However, the IRS's notice of determination at issue in this case involves Mr. Ramdas's liability for only one year--2005--and this Court lacks

(continued...)

[*9] application fee and a $300 downpayment, as well as a Form 433-A with some backup documentation. After reviewing the Form 433-A, the Appeals Officer questioned Mr. Ramdas's attorney about several properties Mr. Ramdas owned, including some that were not disclosed on the Form 433-A. His attorney indicated that the mortgage loans securing most of Mr. Ramdas's properties had been or were being foreclosed upon. The Appeals Officer also inquired whether Mr. Ramdas was current in paying his estimated tax liabilities. His attorney advised that Mr. Ramdas would not be making such payments. At the face-to-face hearing, Mr. Ramdas's attorney did not raise either the issue of abating the penalty or the possibility of an IA.

---

[3](...continued)

jurisdiction to review collection of the liabilities for the years not included in the notice of determination. See Sullivan v. Commissioner, T.C. Memo. 2009-4. However, the OIC that Mr. Ramdas submitted in his CDP hearing did address his liabilities for four years--2005 through 2008. In determining whether the rejection of the OIC and the collection of the liability for the year included in the notice of determination is appropriate, this Court is authorized (and the Appeals Officer was required) to consider "any relevant issue * * * including * * * offers of collection alternatives". Sec. 6330(c)(2)(A), (d). Therefore, in evaluating the Appeals Officer's exercise of discretion in rejecting the OIC, we take into account all the liabilities that were proposed to be compromised, even though we do not have jurisdiction to review the collection of all those liabilities. See, e.g., Orum v. Commissioner, 123 T.C. 1 (2004) (reviewing an OIC that covers income tax liabilities for tax years that are both within and outside of this Court's jurisdiction), aff'd, 412 F.3d 819 (7th Cir. 2005).

**[*10]** At the close of the March 2010 face-to-face meeting, the Appeals Officer asked Mr. Ramdas's attorney to provide additional documentation showing <u>which</u> properties had mortgage loans that were being foreclosed upon, as well as any appraisals and outstanding loan information for the properties. The Appeals Officer also asked Mr. Ramdas's attorney to provide additional documentation regarding Mr. Ramdas's pensions and retirement accounts and regarding four vehicles Mr. Ramdas owned or leased, including a 2007 Acura that appeared on Mr. Ramdas's credit report, but that he had not reported as an asset on his Form 433-A. Mr. Ramdas was given until April 1, 2010, to provide this supplemental documentation.

<u>Appeals' consideration of the OIC</u>

Immediately following the March 2010 face-to-face meeting, Appeals sent Mr. Ramdas's OIC to the IRS's Brookhaven Centralized Offer in Compromise Unit (OIC Unit) for consideration. The OIC Unit processed Mr. Ramdas's OIC and calculated his reasonable collection potential ("RCP") by constructing an income and expense table and an assets and equity table, both based primarily on the information reported in Mr. Ramdas's Form 433-A. In so doing, the IRS determined that Mr. Ramdas had $106,839 available from the equity in his assets:

[*11] $100 from cash on hand

$1,055 from a checking account[4]

$1 from a savings account

$6,142 from the cash value of a life insurance policy

$95,941 from equity in real estate (107-34 116th Street)[5]

$0 from equity in real estate (107-12 113th Street)

$3,600 from equity in a 2000 Nissan Maxima[6]

In addition, the IRS determined that Mr. Ramdas had monthly income of $13,434[7] and necessary monthly expenses of $7,779, thereby leaving net monthly income of $5,655 available to satisfy his outstanding tax obligations. Projecting this monthly

---

[4]This amount is slightly lower than the $2,000 Mr. Ramdas reported on his Form 433-A. The OIC Unit used the lowest balance shown on the account statements submitted with the OIC. As this works in Mr. Ramdas's favor, we accept the lower number.

[5]The OIC Unit limited its June 2010 equity analysis to two properties Mr. Ramdas owned--107-12 113th Street and 107-34 116th Street. Because Mr. Ramdas had not yet provided any information regarding his properties, the OIC Unit used public records and recent comparable sales to determine the values of these properties, and any equity that might exist.

[6]Mr. Ramdas reported a fair market value of $4,500 on his Form 433-A. The OIC Unit discounted the asset to 80% of that value to obtain the quick-sale value for purposes of determining Mr. Ramdas's equity in the car.

[7]For convenience we have rounded the amounts of Mr. Ramdas's income and expenses to the nearest dollar.

[*12] income over the next 120 months (i.e., the remaining collection period), the IRS determined that Mr. Ramdas had $678,485--$5,655 times 120 months--in future income potential available to pay his Federal income tax liabilities. As a result, on June 15, 2010, the OIC Unit determined that Mr. Ramdas could fully pay his outstanding tax liabilities--i.e., a total of $64,410.16 for tax years 2005 through 2008--and it recommended that Mr. Ramdas's OIC be rejected. By letter dated June 15, 2010, Mr. Ramdas and his attorney were informed of the recommendation by the OIC Unit that his OIC should be rejected.

Second meeting

After receiving the June 2010 recommendation that Mr. Ramdas's OIC be rejected, Mr. Ramdas's attorney met with the Appeals Officer again in July 2010 to discuss the OIC. At the conclusion of the meeting, the Appeals Officer again requested that Mr. Ramdas provide the additional information that the Appeals Officer had requested at the conclusion of the first meeting. Appeals gave a deadline of September 8, 2010. There is no evidence that at this second face-to-face meeting Mr. Ramdas's attorney raised or discussed the penalty abatement issue or the possibility of an IA.

**[\*13]** <u>Additional information provided</u>

Attached as Exhibit A to Mr. Ramdas's January 13, 2012, filing in this case is a letter dated September 3, 2010, by which Mr. Ramdas's attorney alleges she provided some of the requested information to the Appeals Officer. The IRS's records do not reflect that it received this letter, but for purposes of this motion we will assume, in Mr. Ramdas's favor, that the information in this letter was provided to the Appeals Officer before the September 8, 2010, deadline.

In the September 2010 letter, Mr. Ramdas's attorney asserted that the mortgage loans for four properties had already been foreclosed upon, that the loans for four properties were currently in foreclosure (or were about to be), and that the loans for four properties were in good standing.[8] For each property, Mr. Ramdas's attorney provided some basic information--e.g., address, date of purchase, purchase price, foreclosure date (if applicable), estimated fair market value, loan balance, and payment status (i.e., default or current) and amount of monthly payment--but not all information was provided for each. In addition, attached to the letter were seven pages of various court documents allegedly relating to some of the properties with foreclosed loans; but on those papers the

---

[8]The two properties used in the OIC Unit's June 2010 equity analysis were listed in Mr. Ramdas's attorney's September 2010 letter as "[p]roperties in good standing".

[*14] identity of the property is given only by handwritten additions, and for the most part, it is therefore unclear which property is the subject of each paper. Moreover, the September 2010 letter included no other corroborating evidence of anything asserted in the letter--e.g., copies of deeds showing ownership; appraisal reports or property tax statements showing estimated fair market value; or deeds of trust, loan payoff statements, or monthly bills to show outstanding encumbrances. Furthermore, the September 2010 letter does not address the Appeals Officer's request for additional documentation regarding Mr. Ramdas's pensions, retirement accounts, and vehicles.

Notice of determination

On March 14, 2011--i.e., nine months after the OIC Unit recommended rejecting the OIC and six months after the latest deadline (September 8, 2010) for Mr. Ramdas to provide additional information to Appeals--Appeals issued to Mr. Ramdas a "Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330", which rejected his OIC and determined to proceed with the proposed levy to collect his unpaid liability for 2005. In the attachment to the notice of determination, the Appeals Officer stated that he had verified that "The requirements of applicable law or administrative procedures have been met", and addressed as follows the issues Mr. Ramdas raised:

[*15]                    **Issues Raised by the Taxpayer**


**Challenges to the Existence or Amount of the Liability**

You challenge the existence or the amount of the tax liability on your CDP hearing request form (Form 12153). The liability is based on an audit conducted on your 2005 income tax return. The additional tax liability per the audit was $28,992.00 with interest of $7,654.62 and penalty for [sic] $5,798.40.

On your Form 12153, you request penalty abatement. You wrote that abatement was warranted under reasonable cause. During the appeal process, you were given sufficient opportunity to present your position. However, no information was supplied.

**Collection Alternatives Offered by the Taxpayer**

You submitted an Offer in Compromise (OIC) as an alternative to the proposed collection action. Your offer was submitted under Doubt as to Collectability [sic] (DATC) and Effective Tax Administration (ETA). The offer was to pay $1,500.00. You submitted the 20% ($300.00) with the balance, $1,200 payable in five months.

On the Form 656, Offer in Compromise, you indicated there was doubt to collectibility as there are insufficient income and assets to full pay the IRS. You further state that if the Service disagreed with DATC then the offer should be reviewed under ETA as requiring full payment would be a hardship. Citing economic hardship, losing real property to foreclosure was you[r] reason for requesting ETA.

I reviewed the documents you supplied. It was incomplete regarding all of the properties in your name. You were asked to supply the additional information. Sufficient time was given to supply such documents but was never received. Therefore, I was unable to evaluate the offer.

**[*16] Other issues raised by the Taxpayer**

You raised no other issues.

**Balancing of Need for Efficient Collection with Taxpayer Concern
That the Collection Action Be No More Intrusive Than Necessary**

I balanced the competing interests in finding the proposed levy is
appropriate. On your request for a CDP hearing, you offered a
collection alternative in the form of an offer-in-compromise (OIC).
However, your proposed collection alternative was not accepted for the
following reasons:

- Additional documentation regarding real estate property
- Based on the limited information received you have the
  ability to full pay your liability
- No evidence of hardship

Because I am unable to process your collection alternative, the
proposed levy balances the need for efficient collection with your
concern that any collection action be no more intrusive than
necessary[.] Permitting the proposed levy balance[s] the need for
efficient collection with your concern that any collection action be no
more intrusive than necessary.

Proceedings in this Court

Mr. Ramdas timely filed a petition in this Court on April 14, 2011,
challenging the determination by Appeals. The petition alleges that Appeals erred
in: (1) stating that Mr. Ramdas had not supplied adequate information during the
CDP hearing; (2) denying Mr. Ramdas a collection alternative, whether an OIC or
an IA; (3) denying Mr. Ramdas an abatement of penalties; and (4) stating that

**[*17]** Mr. Ramdas raised no other issues. In addition, the petition complains that Appeals improperly closed his case and issued the notice of determination and states that Mr. Ramdas "reserves the right to contest any other statements in the Notice of Determination at issue".

On November 3, 2011, the Commissioner moved for summary judgment. In that motion the Commissioner asserts that Appeals did not abuse its discretion by rejecting Mr. Ramdas's OIC after determining he could fully pay his tax liabilities. In addition, the Commissioner maintains that Mr. Ramdas's attorney failed to raise or discuss the issue of penalty abatement or the possibility of an IA at the face-to-face CDP hearing. As a result, the Commissioner contends that Appeals did not abuse its discretion in sustaining the proposed levy against Mr. Ramdas. On December 2, 2011, and January 13, 2012, Mr. Ramdas made filings opposing the Commissioner's motion.

## Discussion

I.   General legal principles

A.   Summary judgment

Under Rule 121 (the Tax Court's analog to Rule 56 of the Federal Rules of Civil Procedure), the Court may grant summary judgment where there is no genuine dispute of any material fact and a decision may be rendered as a matter of

[*18] law. The moving party (here, the Commissioner) bears the burden of showing that no genuine dispute of material fact exists, and the Court will view any factual material and inferences in the light most favorable to the nonmoving party. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); cf. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (same standard under Fed. R. Civ. P. 56). "The opposing party is to be afforded the benefit of all reasonable doubt, and any inference to be drawn from the underlying facts contained in the record must be viewed in a light most favorable to the party opposing the motion for summary judgment." Espinoza v. Commissioner, 78 T.C. 412, 416 (1982). However, Rule 121(d) imposes a duty on a party resisting summary judgment (here, Mr. Ramdas) and provides:

> When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of such party's pleading, but such party's response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial.
> * * *

(Emphasis added.) In compliance with Rule 121(b), the Commissioner made and supported a showing of the facts of the case, and it was incumbent on Mr. Ramdas to "set forth specific facts", supported by affidavits or otherwise, to contradict the

[*19] Commissioner's showing. Mr. Ramdas opposed the Commissioner's motion but did not dispute the facts we rely on here.

On the facts shown by the Commissioner and not disputed by Mr. Ramdas, the Commissioner is entitled to summary judgment.

### B. Collection review procedure

#### 1. In general

If a taxpayer fails to pay any Federal income tax liability after notice and demand, section 6331(a) authorizes the IRS to collect the tax by levy on the taxpayer's property. However, Congress has added to chapter 64 of the Code certain provisions (in subchapter C, part I, and in subchapter D, part I) as "Due Process for Collections", and those provisions must be complied with before the IRS can proceed with a levy: The IRS must first issue a final notice of intent to levy and notify the taxpayer of the right to an administrative hearing before Appeals. Sec. 6330(a) and (b)(1). After receiving such a notice, the taxpayer may request an administrative hearing before Appeals. Sec. 6320(a)(3)(B), (b)(1). Administrative review is carried out by way of a hearing before Appeals pursuant to section 6330(b) and (c); and, if the taxpayer is dissatisfied with the outcome there, he can appeal that determination to the Tax Court under section 6330(d), as Mr. Ramdas has done.

**[*20]**      2.      <u>Agency-level review in levy cases</u>

At the CDP hearing, the Appeals Officer must make a determination whether the proposed collection action may proceed. In the case of a notice of levy, the procedures for the agency-level CDP hearing before Appeals are set forth in section 6330(c). The Appeals Officer is required to take into consideration several things:

First, the Appeals Officer must verify that the requirements of any applicable law and administrative procedure have been met by IRS personnel. <u>See</u> sec. 6330(c)(3)(A). The attachment to the notice of determination set forth the Appeals Officer's compliance with these requirements, and Mr. Ramdas made no challenge as to verification in his petition (or in his response to the motion for summary judgment), so no verification issues under section 6330(c)(1) are at issue.

Second, the taxpayer may "raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including" challenges to the appropriateness of the collection action and offers of collection alternatives. Sec. 6330(c)(2)(A). Some of Mr. Ramdas's contentions pertain to collection alternatives (i.e., an OIC and an IA), which we will discuss below.

[*21] Additionally, the taxpayer may contest the existence and amount of the underlying tax liability, but only if he did not receive a notice of deficiency or otherwise have a prior opportunity to dispute the tax liability. Sec. 6330(c)(2)(B). In his request for a CDP hearing, Mr. Ramdas stated that "taxpayer requests penalty abatement as he believes he has reasonable cause for abatement of penalties." We construe this as a challenge to underlying liability for the penalty, which we will address below.

Finally, the Appeals Officer must determine "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." Sec. 6330(c)(3)(C). The notice of determination found that "Permitting the proposed levy balance[s] the need for efficient collection with * * * [Mr. Ramdas's] concern that any collection action be no more intrusive than necessary," but Mr. Ramdas's request for a CDP hearing argued that the "levy would be a hardship [and] a burden", and we consider that argument to be an assertion of undue intrusiveness.

3. Tax Court review

When Appeals issues its determination, the taxpayer may "appeal such determination to the Tax Court", pursuant to section 6330(d)(1), as Mr. Ramdas

[*22] has done. In a case (not like this one) in which the underlying liability is properly at issue, we review the determination of Appeals de novo, Goza v. Commissioner, 114 T.C. 176, 181-182 (2000); but as to issues other than the underlying liability, we review the determination for abuse of discretion. That is, we decide whether the determination was arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

II.    Mr. Ramdas's contentions

A.    The IRS's non-acceptance of Mr. Ramdas's OIC

Mr. Ramdas submitted to the IRS an OIC by which he proposed to compromise his Federal income tax liabilities for tax years 2005 through 2008 for $1,500. As of June 11, 2010, when the IRS evaluated Mr. Ramdas's offer, his outstanding balance for those years was $64,410. After consideration by the OIC Unit, Appeals rejected Mr. Ramdas's OIC for several reasons: (1) Mr. Ramdas did not furnish all of the requested information necessary for the IRS to properly evaluate his offer; (2) on the basis of the information provided, the IRS determined that Mr. Ramdas could fully pay his outstanding tax liabilities; and (3) Mr. Ramdas made no showing of hardship to warrant an OIC based on effective

**[*23]** tax administration. Mr. Ramdas disputes these determinations, so we will address each in turn.

In doing so, we note that section 7122(a) authorizes compromise of a taxpayer's Federal income tax liability. "'The decision to entertain, accept or reject an offer in compromise is squarely within the discretion of the appeals officer and the IRS in general.'" Gregg v. Commissioner, T.C. Memo. 2009-19 (quoting Kindred v. Commissioner, 454 F.3d 688, 696 (7th Cir. 2006)). Consequently, in reviewing this determination, we do not substitute our judgment for that of Appeals and decide whether in our opinion Mr. Ramdas's OIC should have been accepted. See Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Keller v. Commissioner, T.C. Memo. 2006-166, aff'd in part, 568 F.3d 710 (9th Cir. 2009). Instead, we review Appeals' determination for abuse of discretion.

### 1. Failure to supply information

Mr. Ramdas's attorney submitted his Form 433-A with some supporting documentation at the CDP hearing. After reviewing the financial statement with Mr. Ramdas's attorney, the Appeals Officer requested that Mr. Ramdas provide additional information related to his income and assets. In particular, the Appeals Officer requested more detailed information about each property Mr. Ramdas owned, his pensions and retirement accounts, and his vehicles. Mr. Ramdas

**[*24]** contends that he submitted the additional information by letter dated September 3, 2010.  Although the IRS's record does not show receipt of that information, we assume in Mr. Ramdas's favor, for purposes of the Commissioner's motion for summary judgment, that the information was provided as alleged in Mr. Ramdas's response to that motion.  However, that September 2010 information was haphazard and incomplete as to his real estate; and as to his pensions, retirement account, and vehicles, the September 2010 letter is silent; and Mr. Ramdas does not allege, and our record does not show, that he ever provided any additional information.  As a result, we must conclude that Mr. Ramdas failed to provide adequate financial information to enable the Appeals Officer to determine his financial situation.

For purposes of evaluating an OIC, doubt as to collectibility exists "where the taxpayer's assets and income are less than the full amount of the liability." 26 C.F.R. sec. 301.7122-1(b)(2), Proced. & Admin. Regs.  Because Mr. Ramdas failed to submit much of the requested supplemental information, he failed to provide the Appeals Officer with all of the financial information necessary to fully evaluate Mr. Ramdas's ability to pay his tax liabilities.  For that reason, even if for no other, the Appeals Officer did not abuse his discretion in rejecting any collection alternative based on doubt as to collectibility.  See, e.g., Kansky v.

[*25] Commissioner, T.C. Memo. 2007-40; Criner v. Commissioner, T.C. Memo. 2003-328.

### 2. Ability to fully pay the liabilities

The IRS determined, on the basis of the incomplete financial information that Mr. Ramdas did supply, that he could fully pay his outstanding tax liabilities. For that independent reason, Mr. Ramdas's OIC was rejected.

Under the Commissioner's administrative procedures, an OIC based on doubt as to collectibility will be acceptable only if it reflects the taxpayer's RCP. Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517. RCP is generally calculated by multiplying a taxpayer's monthly income available to pay taxes by the number of months remaining in the statutory period for collection, see sec. 6502, and adding to that product the realizable net equity in the taxpayer's assets. An Appeals Officer does not abuse his discretion when he rejects an OIC because the taxpayer's ability to pay is greater than the amount he proposes to pay under the compromise proposal. See Fargo v. Commissioner, 447 F.3d 706, 709-710 (9th Cir. 2006), aff'g T.C. Memo. 2004-13. Thus, the question is whether Mr. Ramdas's proposed OIC of $1,500 was less than his RCP, thereby warranting its rejection.

**[\*26]** When the IRS determines whether an OIC is acceptable, a taxpayer's RCP is determined, in part, using published guidelines that establish national and local allowances for necessary living expenses; and income and assets in excess of those needed for necessary living expenses are treated as available to satisfy Federal income tax liabilities. See Internal Revenue Manual ("IRM") pt. 5.15.1.2 (Oct. 2, 2009). In calculating Mr. Ramdas's RCP, the IRS determined that he had $106,839 available from the equity in his assets, as well as $678,485 in future income potential, from which to pay his outstanding income tax liabilities.

On the basis of the foregoing, the IRS calculated Mr. Ramdas's RCP to be $785,324. As a result, the IRS determined that Mr. Ramdas could fully pay his outstanding tax liabilities, and it therefore rejected his OIC. Although some of the IRS's calculations are doubtful (as we will explain below), we find that the IRS's overall conclusion cannot be criticized--i.e., that Mr. Ramdas could fully pay his outstanding liabilities.

### a. Equity in assets

Of the assets used by the OIC Unit to determine Mr. Ramdas's ability to pay, all but one--the supposed $95,941 in equity available to Mr. Ramdas from the 116th Street property--were self-reported by Mr. Ramdas on his Form 433-A. As

[*27] a result, we will address only the IRS's determination regarding the available equity in that property.

To determine Mr. Ramdas's net realizable equity available from the 116th Street property, the OIC Unit started with a fair market value of $382,200, which it obtained from a comparable sales analysis.[9] Since Mr. Ramdas owned this property jointly with his wife, the OIC Unit discounted the value to 40% (i.e., one-half of the usual 80% quick sale value). Then, the OIC Unit further reduced this value by one-half of a $113,888 encumbrance on the property. In doing so, the OIC Unit determined that Mr. Ramdas's share of the net realizable equity in the 116th Street property was $95,941.

However, the encumbrance of $113,888 that the OIC Unit used in its analysis was apparently incorrect. The administrative record shows that a $113,887 mortgage loan existed as of November 20, 2003. However, the record also reflects that the mortgage loan was refinanced twice in 2004, resulting in higher loan amounts each time--$266,000 on January 5, 2004, and $382,500 on December 21, 2004. Assuming the facts most favorable to Mr. Ramdas, we

---

[9]In the September 2010 letter, Mr. Ramdas's attorney estimates the fair market value of the 116th Street property to be $350,000--i.e., $32,200 less than the OIC Unit's estimate. However, since Mr. Ramdas gave no basis for his estimate (e.g., comparables, appraisal, etc.), the OIC Unit did not abuse its discretion in using its higher figure.

[*28] assume that in June 2010 the encumbrance on the house was still $382,500 (i.e., more than its fair market value).  As a result, we conclude that he had no equity in the 116th Street property available to satisfy his income tax liabilities.  We therefore assume, for purposes of the IRS's motion, that the RCP from Mr. Ramdas's assets was $10,898 (as Mr. Ramdas reported on his Form 433-A), instead of the $106,839 that the IRS determined.  However, the error was harmless in the context of determining Mr. Ramdas's RCP, as we now show.

### b.  Future income potential

Mr. Ramdas listed his monthly income as $9,581 on his Form 433-A (at page 4), and listed eight monthly expenses totaling $29,165, ostensibly leaving him with zero to pay toward his income tax liabilities.  The OIC Unit, however, determined that he had monthly disposable income of $5,654.  Neither in his petition nor in his opposition to the motion for summary judgment did Mr. Ramdas dispute the OIC Unit's determination of his disposable income, but we nevertheless review the issue briefly.

The OIC Unit's income and expense figures differed from Mr. Ramdas's (in some respects to his advantage, but overall to his disadvantage), and both are set out here:

| [*29] | Mr. Ramdas | OIC Unit |
|---|---|---|
| Monthly income | $9,851 | $13,434 |
| Monthly expenses | | |
| Food, clothing, misc. | $526 | $798 |
| Housing & utils. | 23,771 | 1,759 |
| Transportation-- ownership cost | 460 | 448 |
| Transportation-- operating cost | 300 | 300 |
| Out-of-pocket health care | 600 | 97 |
| Taxes | 3,058 | 4,317 |
| Life insurance | 100 | -0- |
| Union dues | -0- | 60 |
| Student loan | 350 | -0- |
| Total expenses | 29,165 | 7,779 |
| Monthly disposable income | (19,314) | 5,655 |

The earnings statements from Mr. Ramdas's job, which were submitted with his Form 433-A, showed Mr. Ramdas's total wages in 2009 to be $165,815. This would indicate Mr. Ramdas's monthly income in that year was $13,818. On his Form 433-A Mr. Ramdas predicted that he would have a decrease in income because in the future he would have "Less overtime opportunities". This may be the reason that the OIC Unit used a lesser monthly income amount, $13,434, and we see no basis for criticizing that figure.

**[*30]** As is evident above, for several of the claimed expenses, the OIC Unit

arrived at different numbers, and we consider those for which the OIC Unit's

amount was less than Mr. Ramdas's:

Housing and utilities. The OIC Unit consulted local standards[10] to reduce

Mr. Ramdas's housing and utility expenses from $23,771 per month to $2,172,

and then prorated the $2,172 to account for his 81% share of the household

income[11] (i.e., 81% of $2,172) to arrive at the $1,759 allowed. See IRM pt.

5.15.1.9 (Oct. 2, 2009). Generally, we have found no abuse of discretion when an

Appeals officer has used the local standard allowances for housing and utilities

rather than the taxpayer's actual expenses, see, e.g., McDonough v.

Commissioner, T.C. Memo. 2006-234, aff'd in part sub nom. Keller v.

Commissioner, 568 F.3d 710 (9th Cir. 2009); and we have sustained the use of the

national and local allowances as guidelines for basic monthly living expenses in

---

[10]Section 7122(c)(2)(A) requires the Secretary to prescribe guidelines for evaluating offers-in-compromise and to "develop and publish schedules of national and local allowances designed to provide that taxpayers entering into a compromise have an adequate means to provide for basic living expenses."

[11]Pursuant to Internal Revenue Manual pt. 5.15.1.4(3) (Oct. 2, 2009), a taxpayer will be allowed to claim shared household expenses based only on his proportionate share of the total household income. The information that Mr. Ramdas and his wife supplied showed that Mr. Ramdas's income constituted 81% of the total household income.

**[\*31]** evaluating the adequacy of proposed installment agreements and offers-in-compromise, <u>see, e.g.</u>, <u>Speltz v. Commissioner</u>, 124 T.C. 165, 179 (2005), <u>aff'd</u>, 454 F.3d 782 (8th Cir. 2006); <u>Fernandez v. Commissioner</u>, T.C. Memo. 2008-210.

<u>Vehicle ownership costs</u>. Mr. Ramdas claimed $460 as his monthly vehicle ownership cost, but he provided information to Appeals showing that he had a monthly lease payment of only $448. Because he did not substantiate any additional ownership costs, the OIC Unit allowed only the amount of his actual lease payment. This was not an abuse of discretion.

<u>Out-of-pocket health care cost</u>. Mr. Ramdas claimed $600 as his monthly out-of-pocket medical care expenses, but he did not substantiate to Appeals any such expenses. As a result, the OIC Unit allowed him the national standard of $60 per person (i.e., $120 for a two-person household), then prorated the $120 to account for his 81% share of the household income, yielding an allowed expense of $97 (i.e., 81% of $120). This adjustment was not an abuse of discretion.

<u>Life insurance</u>. Mr. Ramdas claimed $100 per month as an expense for life insurance. However, since his life insurance policy had a cash value, Appeals considered it to be an investment and not a necessary monthly expense. <u>See</u> IRM pt. 5.8.5.4.7(1) (Sept. 23, 2008). This adjustment was not an abuse of discretion.

[*32] <u>Student loan</u>. Mr. Ramdas listed a monthly payment of $350 as "Student Loan", but the information he provided to Appeals seemed to indicate that he was not currently paying his student loan debt. As a result, Appeals determined not to allow it as a monthly expense. <u>See</u> <u>id.</u> pt. 5.8.5.6.4(5). This adjustment was not an abuse of discretion.

On the basis of these determinations, the Appeals Officer reckoned that the difference between the allowable amounts of his expenses, totaling $7,779, and his monthly income, $13,434, represented the money Mr. Ramdas had above his basic living expenses which was available to pay taxes--to wit, $5,654 per month of disposable income.

Then, in accordance with IRM pt. 5.8.5.6.6(1) (Sept. 23, 2008), the Appeals Officer calculated Mr. Ramdas's future income potential by projecting that available monthly income over the remaining collection period (i.e., approximately 120 months)--$5,654 times 120 months--to yield future income potential of approximately $678,480.

We find no material flaws with the OIC Unit's analysis of Mr. Ramdas's future income potential, and Mr. Ramdas has not alleged any specific defects. Even if, in order to construe the facts most favorably to Mr. Ramdas for purposes of this motion, we were to find that the OIC Unit overstated Mr. Ramdas's

[*33] monthly income amount, the OIC Unit's ultimate conclusion cannot be criticized. Appeals determined Mr. Ramdas's monthly income to be $13,434 on the basis of his prior year's earnings. However, Mr. Ramdas stated to Appeals that he earned $55.17 per hour, that his prior year's income had included significant overtime, and that his income was likely to decrease in the future because his opportunity for overtime work was decreasing. If Mr. Ramdas's future monthly income is computed without overtime on the basis of a standard 40-hour work week, his monthly income would have been only $9,563,[12] not $13,434. This lower figure corresponds more closely to the $9,851 monthly income amount that Mr. Ramdas originally reported on his Form 433-A. If we therefore compute Mr. Ramdas's monthly disposable income by beginning with the monthly income figure that he listed--$9,851--and subtracting his expenses as determined by the OIC Unit (but reduced, where appropriate, to correspond to his lower income amounts), his disposable monthly income is no less than $2,268:

---

[12]We calculate his income by multiplying his hourly rate, $55.17, by 40 hours per week and by 52 weeks per year, yielding annual income of $114,754. Dividing that annual total by 12 yields monthly income of $9,563.

**[*34]**                                       <u>Recomputed Disposable Income</u>

Monthly income                                           $9,851

Monthly expenses[1]

| | |
|---|---|
| Food, clothing, misc. | $739 |
| Housing & utils. | 1,629 |
| Transportation--<br>    ownership cost | 448 |
| Transportation--<br>    operating cost | 300 |
| Out-of-pocket health care | 90 |
| Taxes | [2]4,317 |
| Life insurance | 0 |
| Union dues | 60 |
| Student loan | 0 |
| Total expenses | 7,583 |
| Monthly disposable income | 2,268 |

[1]Using a lower figure for Mr. Ramdas's monthly income results in his portion of the total household income being lowered from 81% to 75%. As a result, any expense that was originally prorated on an 81% share--i.e., food, clothing, misc., housing & utilities, and out-of-pocket medical expenses--is now allowed on the basis of a 75% share.

[2]Although it is likely that Mr. Ramdas's taxes will decrease as his income does, we will not attempt to recompute Mr. Ramdas's new tax liability. We note that leaving this figure as is works in Mr. Ramdas's favor.

If Mr. Ramdas could pay $2,268 per month towards his income tax liabilities over

120 months, his future income potential would be $272,160 (i.e., $2,268 times 120

[*35] months).  This total is less than the total the OIC Unit determined, $678,480, but is still much more than the $1,500 that Mr. Ramdas proposed to pay in his OIC.

It is possible to bend over backwards even further for Mr. Ramdas:  In October 2010, after the OIC Unit had completed its analysis but before Appeals had rejected the OIC, the IRM was modified.  The new provision, IRM pt. 5.8.5.23(2)(A) (Oct. 22, 2010), provided that, in the case of a lump-sum offer where the offer is to be paid in five months or less (as Mr. Ramdas's OIC was),  future income potential should be projected over 48 months, not 60.  If we take into account this change, then Mr. Ramdas's future income potential would be even less--i.e., $108,664 ($2,268 times 48 months)--but still much greater than the $1,500 he proposed to pay.

Thus, even assuming in Mr. Ramdas's favor all the facts that might be disputed, by taking into account as equity in assets only the amount to which he agreed, $10,898, and the lower amount for future income potential, $108,664, on the basis of his income figures and the amended IRM, even then Mr. Ramdas's RCP would be $119,562, an amount sufficient to fully pay his outstanding income tax liabilities of $64,410.  As a result, Appeals did not err in refusing to accept Mr. Ramdas's OIC based on doubt as to collectibility.

**[\*36]**      3.      Effective tax administration

As an alternative to considering his OIC on the basis of doubt as to collectibility, Mr. Ramdas asked Appeals to consider his OIC on the basis of a claim of effective tax administration (ETA). Regulations adopted pursuant to section 7122 set forth guidelines for evaluating offers to promote ETA. Under 26 C.F.R. section 301.7122-1(b)(3)(i), Proced. & Admin. Regs., ETA offers may be accepted where collection in full could be achieved but would cause economic hardship. Economic hardship exists only in certain instances:

> The levy [should be released when it] is creating an economic hardship due to the financial condition of an individual taxpayer. This condition applies if satisfaction of the levy in whole or in part will cause an individual taxpayer to be unable to pay his or her reasonable basic living expenses. The determination of a reasonable amount for basic living expenses will be made by the director and will vary according to the unique circumstances of the individual taxpayer. Unique circumstances, however, do not include the maintenance of an affluent or luxurious standard of living.

26 C.F.R. sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs. Thus, Mr. Ramdas's entitlement to an OIC based on ETA depended on whether he was able to pay "reasonable basic living expenses". See id. The Appeals Officer, in determining Mr. Ramdas's reasonable collection potential, determined that he could fully pay his basic living expenses each month. See part II.A.2.b. above. On his Form 12153, Mr. Ramdas indicated that his losing real property to foreclosure was

**[*37]** the reason for requesting an OIC based on ETA. That is, the "hardship" he feared he would suffer from paying his taxes would be the loss of his investments. However, Mr. Ramdas's concern in not being able to retain several rental properties hardly rises to the level of hardship of not being able to pay basic living expenses. In so concluding, the Appeals Officer determined that Mr. Ramdas had made no showing of hardship, and we cannot say that this conclusion was arbitrary or unreasonable. Acceptance or rejection of a compromise is within the Secretary's discretion, 26 C.F.R. sec. 301.7122-1(c)(3)(iv), Proced. & Admin. Regs., and we find no abuse of discretion in the Appeals Officer's determination that Mr. Ramdas was not eligible for an OIC based on ETA.

### B. The IRS's non-acceptance of an IA

In his petition Mr. Ramdas argued that he should have been allowed to enter into an IA once his OIC had been rejected. However, while Mr. Ramdas did check a box on his Form 12153 indicating that he desired an IA, he never actually proposed to Appeals any specific payment amounts or installment schedule either formally on a Form 433-D, "Installment Agreement", or informally. As a result, we cannot find that Mr. Ramdas proposed an IA for consideration, and it is not an abuse of discretion for an Appeals officer to sustain a levy and not consider an IA

**[\*38]** when the taxpayer has proposed none. <u>Kendricks v. Commissioner</u>, 124 T.C. 69, 79 (2005).

### C.    Failure to abate Mr. Ramdas's penalties

On his Form 12153 Mr. Ramdas requested an "abatement of penalties". On the record before us it is unclear which penalties Mr. Ramdas was challenging--the accuracy-related penalty under section 6662 that had been included on his notice of deficiency or the failure-to-pay penalty[13] under section 6651(a)(3) that accrued thereafter. As a result, we will address both.

### 1.    The section 6662(a) accuracy-related penalty

Mr. Ramdas's accuracy-related penalty under section 6662 was assessed on February 9, 2009, following the examination of his 2005 income tax return. The Commissioner asserts that it issued to Mr. Ramdas the requisite statutory notice of deficiency following that examination and that he failed to file a deficiency case in this Court. Mr. Ramdas has not disputed the Commissioner's assertion. Now he seeks to challenge the penalty in this CDP case.

---

[13]The amount Mr. Ramdas owed for failure to pay an amount not shown but required to be shown on a return within 21 days of notice and demand, sec. 6651(a)(3), is referred to in that provision as an "addition to tax". However, since the levy notice refers to the failure-to-pay addition under section 6651(a)(3) as a "penalty", we will assume Mr. Ramdas could have been requesting the abatement of this "penalty" when he filed his Form 12153.

[*39] A taxpayer cannot challenge the underlying liability in a CDP hearing if he received a notice of deficiency, sec. 6330(c)(2); and a challenge to the amount of an assessed penalty constitutes a challenge to the underlying liability, Olesen v. Commissioner, T.C. Memo. 2009-307 (citing Montgomery v. Commissioner, 122 T.C. 1, 7-8 (2004)). Since Mr. Ramdas received a deficiency notice and therefore had a prior opportunity to challenge his liability for the accuracy-related penalty under section 6662, he may not do so in this case. As a result, Appeals did not err in refusing to consider Mr. Ramdas's abatement claim as it related to the section 6662 penalty.

### 2. The section 6651(a)(3) addition to tax

Section 6651(a)(3) imposes an addition to tax in the case of a failure to pay a tax required to be shown on a return, which was not so shown, within 21 days after the date of the IRS's notice and demand letter. Because Mr. Ramdas failed to pay his assessed deficiency (i.e., the tax required to be shown on his return which was not so shown) within 21 days of notice and demand, he was held liable for an addition to tax under section 6651(a)(3). That addition to tax accrues only after notice and demand; and notice and demand can be made only after assessment. See sec. 6303(a). Thus, by its nature the section 6651(a)(3) addition is not determined on a notice of deficiency (i.e., a notice proposing to assess tax not yet

**[\*40]** assessed); and if Mr. Ramdas had filed a deficiency suit, the section 6651(a)(3) addition would not have started to accrue until after that suit was concluded and the tax was actually assessed. As a result, notwithstanding his receipt of a notice of deficiency for 2005, Mr. Ramdas has not had a prior opportunity to dispute the section 6651(a)(3) addition, and he was entitled to challenge it during the CDP hearing. See Burke v. Commissioner, T.C. Memo. 2009-282.

Nonetheless, it was incumbent upon Mr. Ramdas to specifically raise any abatement claim related to the section 6651(a)(3) addition in his CDP hearing. He did not. At best, Mr. Ramdas made the vague statement in his Form 12153 that "taxpayer requests penalty abatement as he believes he has reasonable cause". Otherwise, the administrative record and the filings in this case[14] are devoid of any evidence showing that Mr. Ramdas's attorney specifically raised the issue of abatement of the section 6651(a)(3) addition, either in the CDP hearing or in this

---

[14]A petition commencing a CDP case in this Court must contain "[c]lear and concise assignments of each and every error which the petitioner alleges to have been committed in the notice of determination. Any issue not raised in the assignments of error shall be deemed to be conceded." Rule 331(b)(4). Mr. Ramdas's petition did not clearly or concisely raise failure to abate the section 6651(a)(3) addition, and we find that he has conceded that issue because of lack of specificity in his petition.

**[*41]** proceeding. Raising the issue was the duty of Mr. Ramdas and his attorney, and Appeals did not abuse its discretion by declining to raise this argument sua sponte.

We cannot review Appeals' determination on the basis of an issue that was never raised before or considered by Appeals. See Magana v. Commissioner, 118 T.C. 488, 493-494 (2002) (holding that issues not raised at the administrative level may not be reviewed by this Court). We therefore do not overturn Appeals' determination on the basis of its non-ruling on the section 6651(a)(3) addition to tax that Mr. Ramdas never raised before Appeals.

D. Hardship

Mr. Ramdas's request for a CDP hearing also alleged that the levy would be "a hardship [and] a burden." We consider this contention as a challenge to Appeals' determination that the levy would not be "more intrusive than necessary", for purposes of section 6330(c)(3)(C), when balancing the IRS's need for collection. It was incumbent upon Mr. Ramdas to follow up that general allegation with further information and actually prove the harm of the levy before Appeals, but he did not do so. The only specific harm Mr. Ramdas alleged before Appeals was the loss of property due to foreclosure. We find that argument to be unconvincing for several reasons. First, Mr. Ramdas asserted before Appeals that

[*42] the mortgage loans securing 8 of his 12 properties had already been foreclosed or were in the process of foreclosure. The proposed levy would not further harm Mr. Ramdas in that respect. Second, in addition to his primary residence, Mr. Ramdas had three other properties that he wanted to retain. Conscientious taxpayers would object--and the system would suffer--if a taxpayer with overdue taxes could effectively obtain forgiveness of his liability just because he has several pieces of real estate he wants to retain for himself rather than use to pay his tax obligations to the IRS. Lastly, Mr. Ramdas has sufficient income to provide for his basic living expenses (as we determined above), so no hardship is demonstrated that would render the levy "more intrusive than necessary".

In any event, there is no evidence that Mr. Ramdas's attorney ever addressed this issue before Appeals. As a result, we cannot consider this argument for the first time here. See Magana v. Commissioner, 118 T.C. at 493-494. Furthermore, since this issue was not stated in Mr. Ramdas's petition, we hold that the contention (even if it had been properly raised in the course of the CDP hearing) has been conceded or abandoned in this litigation. See Rule 331(b)(4); Busche v. Commissioner, T.C. Memo. 2011-285.

[*43] E.     Closing Mr. Ramdas's case

In his petition Mr. Ramdas asserts that the "IRS Appeals improperly closed [his] case". The contention is without merit. On the basis of our review of the record, we find the following timeline related to Mr. Ramdas's CDP hearing:

Mr. Ramdas timely requested his CDP hearing in September 2009. On his Form 12153 he raised various issues (e.g., OIC, IA, penalty abatement, and hardship). After having his case reassigned to a local office for a face-to-face hearing, Mr. Ramdas's attorney requested a later hearing date. Mr. Ramdas's face-to-face CDP hearing occurred in March 2010. At that hearing, Mr. Ramdas's attorney submitted Mr. Ramdas's financial information (on a Form 433-A), with some, but not all, of the required substantiation, and submitted an OIC. At that hearing, Mr. Ramdas's attorney did not raise or discuss the other issues raised on his Form 12153. The Appeals Officer requested that Mr. Ramdas provide additional information regarding his income and assets and forwarded his OIC to the OIC Unit for consideration. In June 2010 the OIC Unit issued its recommendation that Mr. Ramdas's OIC be rejected because he could fully pay his liabilities. In July 2010 Mr. Ramdas's attorney met with the Appeals Officer again to further discuss the proposed OIC. At this second face-to-face meeting, Mr. Ramdas's attorney again did not raise or discuss the other issues raised in his

**[\*44]** Form 12153, nor did she provide the additional information that had been previously requested. In September 2010 Mr. Ramdas provided the Appeals Officer with some, but not all, of the additional information requested. Six months later, in March 2011, the Appeals Officer issued a notice of determination rejecting Mr. Ramdas's OIC and determining to sustain the proposed levy.

We find no defects in the CDP hearing process or the issuance of the notice of determination. The Appeals Officer properly recounts his verification as required by section 6330(c)(1). Furthermore, in accordance with section 6330(c)(2)(A), the Appeals Officer considered and rejected Mr. Ramdas's OIC--the only collection alternative he proposed. To the extent the issue of the underlying liability was raised in Mr. Ramdas's Form 12153 in the form of a request for penalty abatement, the Appeals Officer considered this in compliance with section 6330(c)(2)(B). And last, the Appeals Officer considered Mr. Ramdas's argument of undue burden when balancing the need for collection as required by section 6330(c)(3)(B). We can find no issue raised by Mr. Ramdas that was not considered and addressed by the Appeals Officer. Appeals did not abuse its discretion in closing Mr. Ramdas's CDP hearing and issuing him a notice of determination.

**[*45]**                                      <u>Conclusion</u>

The IRS's Office of Appeals did not abuse its discretion in denying

Mr. Ramdas's OIC and sustaining the proposed levy to collect his unpaid income

tax for 2005.  As a result, respondent's motion for summary judgment will be

granted.

<u>An appropriate order and decision</u>

<u>will be entered</u>.